UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL OJEDA,<br>        Plaintiff,<br>v.<br>C. SANDOVAL, et al.,<br>        Defendants. | Case No. 21-cv-07479-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO AMEND; AND SERVING FIRST AMENDED COMPLAINT**<br><br>Docket No. 10 |

Manuel Ojeda, a prisoner at High Desert State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983 complaining of an incident that occurred at Pelican Bay State Prison ("PBSP"), where he previously was incarcerated. *See* Docket No. 1 ("Complaint"). The Court screened the Complaint pursuant to 28 U.S.C. 1915A and dismissed it with leave to amend. *See* Docket No. 9 ("Screening Order").

Mr. Ojeda moved for leave to amend and attached his First Amended Complaint ("FAC") to that motion. Docket No. 10. Mr. Ojeda's motion is **GRANTED**, although it was unnecessary because the Court already gave Mr. Ojeda leave to amend in the Screening Order.

The FAC is now before the Court for review. For the reasons stated below, the Court orders Defendants to respond to the FAC.

## I.   ANALYSIS

Mr. Ojeda formerly was incarcerated at Pelican Bay State Prison ("PBSP"), and his allegations concern events at that prison. *See generally*, FAC.

A.   Excessive Force Claim

In the original Complaint, Mr. Ojeda described an incident in which multiple officers

1  applied force to his person and contended that force was excessive. *See* Compl. at 4-6. In the
2  Screening Order, the Court found that Mr. Ojeda had stated a cognizable claim for excessive force
3  against five correctional officers: PBSP Correctional Officers C. Sandoval, E. Rivera-Rangel, Y.
4  Lee, K. Story, and A. Maylin. *See* Screening Order at 5.

5        The FAC contains the same allegations as the original Complaint, *see* FAC at 2-4, and Mr.
6  Ojeda again states a cognizable claim against these Defendants.

### B.  Medical Needs Claim

      In the original Complaint, Mr. Ojeda alleged that the five above-named Defendants failed to seek medical care for him after the excessive force incident, although he was bleeding from the head and had fainted twice. *See* Compl. at 6. Mr. Ojeda also alleged that two unnamed officers took him to a holding cell but failed to seek medical care for hours despite Mr. Ojeda's request for such care and his obvious injuries. *See id*. In the Screening Order, the Court found that Mr. Ojeda had stated a cognizable claim for deliberate indifference to a serious medical need against the five above-named Defendants, as well as the unnamed officers. *See* Screening Order at 7-8. The Court suggested Mr. Ojeda name the unnamed officers if possible. *See id*. at 8.

      Mr. Ojeda now clarifies that those unnamed officers were PBSP Correctional Officers A. Schaad and T. Wood, but the substance of his allegations against them did not change. *See* FAC at 4. Mr. Ojeda again states a cognizable claim against these seven Defendants.

### C.  Due Process Claim

      In the original Complaint, Mr. Ojeda alleged that he had been subject to a disciplinary charge after the alleged force incident; that Defendant Sandoval had fabricated a disciplinary charge and lied in the disciplinary proceedings; and that Defendant Frisk had denied him due process during the disciplinary proceedings. *See* Compl. at 6-8.

#### 1.  Due Process Claim, Generally

      In the Screening Order, the Court explained that Mr. Ojeda had not identified a "deprivation of real substance," as is required to state a due process claim, and that Mr. Ojeda needed to explain what he had lost as a result of the disciplinary proceeding. *See* Screening Order at 8-9. In the FAC, Mr. Ojeda explains that his punishment after the disciplinary proceeding was

"a sentence [of] 29 month[s] in segregation"; with "loss of privilege[s]" which included the loss of access to telephone and contact visitation privileges, canteen privileges, and the loss of some property; "the loss of 360 day[s] of good time credit"; and the requirement that Mr. Ojeda "donate" property worth $200 to the prison. *See* FAC at 8.

Two of these punishments may constitute a deprivation of "real substance," which is enough to support a due process claim at this juncture. First, Mr. Ojeda's 29-month sentence to segregation exceeds a term which the Ninth Circuit previously recognized as an "atypical and significant hardship" within the meaning of *Sandin*. *See Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 988 (9th Cir. 2014) (finding that a 27-month confinement could support a due process claim); *see also King v. Davis*, No. 19-CV-08201-SI, 2020 WL 3961976, at *2 (N.D. Cal. July 13, 2020) (concluding a 180-day confinement was "an atypical and significant hardship" within the meaning of *Sandin*). Second, Mr. Ojeda may be able to premise a due process claim on being forced to "donate" property to the prison. The Ninth Circuit has held that, in certain circumstances, the loss of an inmate's property may trigger the Due Process Clause. *See, e.g., Shinault v. Hawks*, 782 F.3d 1053 (9th Cir. 2015) (concluding the Due Process Clause was implicated where prison officials froze an inmate's trust account). Because these two punishments are sufficient to suggest that Mr. Ojeda suffered a "deprivation of real substance," the Court concludes that Mr. Ojeda has stated a cognizable due process claim.

Although the Court does not dismiss any part of the due process claim at this point, Mr. Ojeda is advised that his other two punishments may not be able to support a due process claim. First, Mr. Ojeda's loss of privileges is unlikely to constitute a deprivation of "real substance." The Ninth Circuit has considered restrictions on the privileges at issue here and held their restriction does not implicate a liberty interest. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (holding there is no constitutional right to canteen items), *opinion amended on denial of reh'g,* 135 F.3d 1318 (9th Cir. 1998); *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1315 (9th Cir.) (finding "there is no liberty interest in" the loss of recreational programs), *opinion amended on denial of reh'g,* 75 F.3d 448 (9th Cir. 1995); *Mahon v. Prunty*, 87 F.3d 1320 (9th Cir. 1996) (finding no liberty interest in family visits, telephone calls, or yard access) (unpublished); *Davis v. Small*, 595 F.

App'x 689, 691 (9th Cir. 2014) (finding no liberty interest in telephone or yard privileges); *see also Sandin v. Conner*, 515 U.S. 472, 500 (1995) (Breyer, J., dissenting) (describing the "'[l]oss of privileges' such as "community recreation; commissary; . . . personal visits . . . ; personal phone calls . . ." as "less significant" and "comparatively unimportant prisoner 'deprivations'"). However, these cases may be distinguishable because they address relatively short periods where inmates lost phone and visitation privileges. *See, e.g., Mahon*, 87 F.3d 1320 (holding that "[t]he temporary loss" of phone and visitation privileges did not implicate *Sandin*).

Second, the loss of good-time credits either is not a deprivation of real substance or may require Mr. Ojeda's due process claim to be heard in a habeas petition before it can be pursued in a civil rights action. If Mr. Ojeda is serving a determinate sentence, then his damages claim is *Heck*-barred until the disciplinary finding has been expunged. *See Ramirez v. Galaza*, 334 F.3d 850, 858-59 (9th Cir. 2003) (interpreting *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997)). This would require Mr. Ojeda to challenge the disciplinary finding in a habeas action before seeking damages. Alternately, if Mr. Ojeda is serving a life sentence, then the loss of good-time credits can make no difference to the length of his sentence, and so is not a deprivation of "real substance." *See Lees v. Mariscal*, No. 19-CV-01603-HSG, 2022 WL 4591794, at *6 (N.D. Cal. Sept. 29, 2022) ("Credit loss by an inmate serving a life term without the possibility of parole also does not constitute an atypical and significant hardship within the meaning of *Sandin*.").[1] In this circumstance, a due process claim premised solely on the loss of time credits would fail. Likewise, if Mr. Ojeda is serving a sentence of life with the possibility of parole (e.g., 25 years to life), then the loss of good-time credits at most delays an intervening decision by the parole board, and there is no liberty interest sufficient to trigger the Due Process Clause. *See Palazuelos v. Frisk*, No. 22-CV-00262-JSW, 2022 WL 913209, at *2 (N.D. Cal. Mar. 29, 2022) (dismissing complaint because plaintiff failed to state a cognizable claim, where he lost good-time credits but

---

[1] *See also Gibbs v. Carson*, No. 13-CV-0860-TEH, 2016 WL 641635, at *4 (N.D. Cal. Feb. 18, 2016) ("Plaintiff is serving a prison term of life without the possibility of parole; therefore, the forfeiture of credits does not affect Plaintiff's sentence because there is no possibility of parole.")

4

1  was serving an indeterminate sentence).[2]

2  The Court cannot determine at this juncture whether Mr. Ojeda's due process claim is
3  *Heck*-barred, or whether it simply fails to the extent it is based on the loss of good-time credits,
4  because the Court does not know the nature of Mr. Ojeda's sentence.  If Defendants come forward
5  with evidence that Mr. Ojeda's due process claim is *Heck*-barred, the due process claim may need
6  to be dismissed without prejudice to re-filing in a later action if Mr. Ojeda succeeds in having the
7  disciplinary finding expunged.

8  Because Mr. Ojeda identifies two punishments which appear to be deprivations of real
9  substance, the Court concludes that his due process claim should be served upon Defendants.
10 However, the Court explains for Mr. Ojeda's benefit that if Defendants can show that his 29-
11 month placement in segregation, or the loss of his property, are insufficient to support a due
12 process claim, then the due process claim likely will fail because Mr. Ojeda's loss of privileges or
13 loss of time credits likely would be insufficient to support it.  Moreover, if Mr. Ojeda is serving a
14 determinate sentence, his due process claim likely will need to be dismissed as *Heck*-barred.

15     2.    <u>Due Process Claim Against Defendant Frisk</u>

16 Defendant Frisk conducted Mr. Ojeda's disciplinary hearing.  *See* FAC at 7-8.

17 In the original Complaint, Mr. Ojeda alleged that Defendant Frisk deprived him of due
18 process during the disciplinary hearing.  The Court found that Mr. Ojeda had sufficiently alleged
19 that Defendant Frisk did not follow the due process guarantees of *Wolff*.  *See* Screening Order at 9-
20 10.  Mr. Ojeda's due process claim failed at that juncture only because he had not yet identified a

---

[2] *See also Pelayo v. Greer*, No. 19-CV-04135-RS (PR), 2022 WL 468193, at *6 (N.D. Cal. Feb. 1, 2022) (where plaintiff was serving an indeterminate sentence, no liberty interest in loss of good-time credits); *Barno v. Padilla*, No. 20-CV-03886-SI, 2020 WL 6544427, at *3 (N.D. Cal. Nov. 6, 2020) (because it was not "inevitable" that the plaintiff's sentence would be affected by the loss of good time credits, no liberty interest created); *Ernest v. Van Blarcom*, No. C-16-3655-WHA-PR, 2018 WL 9651054, at *3 (N.D. Cal. Aug. 16, 2018) (because the effect of good time credits on the plaintiff's eventual release was "merely possible" rather than "inevitable," the possibility of earlier parole was "too attenuated to amount to a deprivation of 'real substance'"); *Rouser v. Crounse*, No. 19-CV-00550 -GSA-PC, 2020 WL 4368303, at *5 (E.D. Cal. July 30, 2020) (because credits only "'go toward advancing only the inmate's [Minimum Eligible Parole Release Date], . . . they 'have no real impact . . . on [the inmate's] eventual release date on parole,'" and cannot support a liberty interest) (citation omitted); *Armenta v. Paramo*, No. 16-CV-02931-BTM-KSC, 2018 WL 4612662, at *8 (S.D. Cal. Sept. 25, 2018) (same).

1  deprivation of real substance.  *See id*. at 8-10.

2  The FAC contains the same allegations against Defendant Frisk as the original Complaint, *see* FAC at 7-8, and as explained *supra*, Mr. Ojeda now identifies a deprivation of real substance. Accordingly, the Court concludes that Mr. Ojeda states a cognizable due process claim against Defendant Frisk.

### 3. Due Process Claim Against Defendant Sandoval

In the original Complaint, Mr. Ojeda alleged that Defendant Sandoval "lied about" the excessive force incident "in his report." Compl. at 8. The Court concluded that Mr. Ojeda's due process claim failed because he had not identified a deprivation of real substance, and because he had not provided sufficient information about "what Defendant Sandoval said, how it differed from the truth, or what the consequences of the alleged lie were for Mr. Ojeda." Screening Order at 10-11.

As explained above, Mr. Ojeda now identifies a deprivation of real substance. He also specifically identifies the statements in Defendant Sandoval's disciplinary report that he contends were false, explains how they differ from the truth, and points to evidence to support his allegation. *See* FAC at 5-6. The Court therefore concludes that Mr. Ojeda sufficiently alleges a due process claim against Defendant Sandoval.

However, Mr. Ojeda is cautioned again that, if Defendant Frisk can show he provided the due process required by *Wolff*, this will in effect have "cured" any constitutional wrong caused by Defendant Sandoval's report, and the claim against Defendant Sandoval will immediately fail. *See* Screening Order at 10-11 (explaining this problem).

## II.   CONCLUSION

For the foregoing reasons, Defendants must respond to Mr. Ojeda's excessive force, medical needs, and due process claims.

For the foregoing reasons and for good cause shown,

1. The following Defendants shall be served: Correctional Officers C. Sandoval, E. Rivera-Rangel, Y. Lee, K. Story, A. Maylin, A. Schaad and T. Wood, and Lieutenant Frisk. All these Defendants are employed at Pelican Bay State Prison.

2. Service on Defendants shall proceed under the California Department of Corrections and Rehabilitation's (CDCR) e-service program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the Clerk is directed to serve on CDCR via email the following documents: the FAC (Docket No. 10); the Screening Order (Docket No. 9); this order of service; a CDCR Report of E-Service Waiver form; and a summons. The Clerk also shall serve a copy of this order on Plaintiff.

3. No later than 40 days after service of this order via email on CDCR, CDCR shall provide the Court a completed CDCR Report of E-Service Waiver advising the Court which Defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) and which Defendant(s) decline to waive service or could not be reached. CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within 21 days, shall file with the Court a waiver of service of process for the Defendant(s) who are waiving service.

4. Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each Defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-205 Form. The Clerk shall provide to the USMS the completed USM-205 forms and copies of this order, the summons and the First Amended Complaint and Reply for service upon each Defendant who has not waived service. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

5. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a. No later than **June 2, 2023**, Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. If Defendants file a motion for summary judgment, Defendants must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012). If Defendants move to dismiss any part of this action as *Heck*-barred, Defendants must explain to the Court which claims against

1 which Defendants are *Heck*-barred, and why.

2         b.      Plaintiff's opposition to the summary judgment or other dispositive motion

3 must be filed with the Court and served upon Defendants no later than **June 30, 2023**. Plaintiff

4 must bear in mind the notice and warning regarding summary judgment provided later in this

5 order as he prepares his opposition to any motion for summary judgment.

6         c.      Defendants **shall** file a reply brief no later than **July 14, 2023**.

7     6.    Plaintiff is provided the following notices and warnings about the procedures for

8 motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

20 If Defendants file a motion for summary judgment for failure to exhaust administrative remedies,

21 it is seeking to have the case dismissed. As with other defense summary judgment motions, if a

22 motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's

23 case will be dismissed and there will be no trial.

24     6.    All communications by Plaintiff with the Court must be served on defense counsel

25 by mailing a true copy of the document to defense counsel. The Court may disregard any

26 document which a party files but fails to send a copy of to his opponent. Until defense counsel

27 has been designated, Plaintiff may mail a true copy of the document directly to each individual

28 Defendant, but once a Defendant is represented by counsel, all documents must be mailed to

counsel rather than directly to the party.

7. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. **No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.**

8. Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

9. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

This order disposes of Docket No. 10.

**IT IS SO ORDERED**.

Dated: March 9, 2023

_____
EDWARD M. CHEN
United States District Judge